## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:20-cv-21745-GAYLES

**ATMA BEAUTY, INC.**,

    Plaintiff,

v.

**HDI GLOBAL SPECIALTY SE, AXIS SPECIALTY EUROPE SE, UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NUMBER RSK003959, and UNDERWRITERS AT LLOYD'S LONDON KNOWN AS SYNDICATES AFB 2623, AFB 623, APL 1969, ARG 2121, BRT 2987, BRT 2988, HIS 33, KLN 510, MMX 2010, MSP 318, NVA 2007, TRV 5000, AND XLC 2003**,

    Defendants.

_____/

### **ORDER**

**THIS CAUSE** comes before the Court on Defendants HDI Global Specialty SE, Axis Specialty Europe SE, Underwriters at Lloyd's London Subscribing to Policy Number RSK003959, and Underwriters at Lloyd's London Known as Syndicates AFB 2623, AFB 623, APL 1969, ARG 2121, BRT 2987, BRT 2988, HIS 33, KLN 510, MMX 2010, MSP 318, NVA 2007, TRV 5000, and XLC 2003's[1] (collectively, "Defendants") Motion to Dismiss the Complaint (the "Motion") [ECF No. 18]. The Court has reviewed the Motion and the record, heard oral argument on the Motion, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted.

---

[1] Although Defendants' Motion is titled "Defendants Underwriters at Lloyd's, London Subscribing to Policy Number RSK003959's Motion to Dismiss the Complaint", the Motion is as to all Defendants. *See* [ECF No. 23].

## BACKGROUND[2]

Plaintiff Atma Beauty, Inc. owns and operates a full-service salon and medical spa in Miami Beach, Florida. On December 19, 2019, Defendants issued an all-risk insurance policy (the "Policy") that insured the physical premises of Plaintiff's salon and income generated from the salon. The Policy's coverage period was from December 19, 2019, to December 19, 2020. Plaintiff paid monthly premiums in exchange for Defendants covering certain losses and expenses, including loss of business income due to suspension of the salon's operations, expenses incurred during the salon's suspension, and loss resulting from actions of a civil authority that prohibited access to the salon.

### A.     The Policy

The general coverage provision of the Policy states that Defendants "will pay for *direct physical loss of or damage to* Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." [ECF No. 4-1 at 16] (emphasis added). A "Covered Cause of Loss" under the Policy means "Risks of Direct Physical Loss" unless the loss is excluded or limited. *Id.* at 45. The Policy includes a standard form titled "Business Income (and Extra Expense) Coverage Form" that outlines coverage for various losses and expenses. *Id.* at 32.

#### 1.     *Business Income Coverage*

The Policy provides coverage for loss of business income resulting from a Covered Cause of Loss and states in pertinent part that Defendants:

> [W]ill pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by *direct physical loss of or damage to* property at [covered] premises . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

---

[2] As the Court is proceeding on a motion to dismiss, it accepts Plaintiff's allegations in the Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

*Id.* at 32 (emphasis added). The Policy defines "business income" as "[n]et income . . . that would have been earned or incurred; and . . . [c]ontinuing normal operating expenses incurred, including payroll." *Id.*

### 2. Extra Expense

The Policy provides payment for "necessary expenses [Plaintiff] incur[s] during the 'period of restoration'" that it "would not have incurred if there had been no *direct physical loss or damage to property* caused by or resulting from a Covered Cause of Loss."[3] *Id.* (emphasis added). This "Extra Expense" payment is designed to "[a]void or minimize the 'suspension' of business and to continue operations at the [covered] premises" or at an alternative location or to "[m]inimize the 'suspension' of business if [Plaintiff] cannot continue 'operations'." *Id.* at 32–33. The Policy will also provide payment under this provision "to repair or replace property, but only to the extent it reduces the amount of loss" during the period of restoration. *Id.* at 33.

### 3. Civil Authority Coverage

The Policy provides coverage for loss of business income caused by the actions of a civil authority and states in pertinent part that:

> When a Covered Cause of Loss causes *damage to* property other than property at the [covered] premises, [Defendants] will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the [covered] premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the [covered] premises are within that area but are not more than one mile from the damaged property; and

---

[3] For Business Income Coverage, the "period of restoration" begins 72 hours after the time of direct physical loss or damage caused by a Covered Cause of Loss. [ECF No. 4-1 at 40]. For Extra Expense Coverage, the "period of restoration" begins immediately after the time of direct physical loss or damage by a Covered Cause of Loss. *Id.* The period ends either on the date when the premise should be repaired, rebuilt, or replaced with reasonable speed and similar quality or the date when business resumes at a new permanent location, whichever is earlier. *Id.*

> (2) The action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 33 (emphasis added).

### B. Factual Background

On March 12, 2020, the City of Miami Beach declared a State of Emergency in response to the COVID-19 pandemic. On March 19, 2020, Miami-Dade County issued Emergency Order 07-20, which required the closure of all non-essential businesses, including Plaintiff's salon. On March 30, 2020, the Governor of Florida signed Executive Order 20-89 restricting public access to businesses and facilities deemed non-essential and implementing repercussions for violating the Executive Order. The City of Miami Beach similarly issued and extended several Emergency Orders throughout March and April 2020 that required residents to remain at home and closed all non-essential retail and commercial establishments. As a result, Plaintiff suspended business operations at the salon, could not access or occupy the salon, and incurred significant loss and expenses.

### C. Procedural History

On April 27, 2020, Plaintiff filed this action against Defendants for declaratory relief and monetary damages based on the Policy as a result of suspending business operations in response to the COVID-19 pandemic. [ECF No. 1]. Plaintiff brings claims for: (1) declaratory judgment as to the Business Income, Extra Expense, and Civil Authority Coverage provisions (Counts I, III, and V); and (2) breach of contract of the Business Income, Extra Expense, and Civil Authority Coverage provisions (Counts II, IV, and VI). On July 14, 2020, Defendants filed the instant Motion, [ECF No. 18], and on November 12, 2020, the Court heard oral argument on the Motion, [ECF Nos. 35 & 39].

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## ANALYSIS

Defendants move to dismiss Plaintiff's Complaint for three main reasons. First, Defendants argue that Plaintiff failed to sufficiently allege that it suffered a "direct physical loss of or damage to" the insured property under the Business Income, Extra Expense, or Civil Authority provisions of the Policy. Second, Defendants argue that even if Plaintiff suffered a direct physical loss or damage, the Policy's microorganism and pollution exclusions preclude coverage. Third, Defendants argue that Plaintiff fails to sufficiently allege a cause of action for breach of contract.

"In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its 'full meaning and operative effect.'" *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). "[I]nsurance contracts are construed according to their plain meaning," *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (per curiam) (citation omitted); that is, courts begin their analysis by looking at the "plain language of the policy, as bargained for by the parties," *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002) (citation omitted). Where coverage is in dispute, "an insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect." *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018) (citation omitted). If the insured satisfies its burden, "the burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." *Id.* (citation omitted).

To trigger coverage under the Business Income, Extra Expense, or Civil Authority provisions of the Policy, Plaintiff must prove that there was "direct physical loss of or damage to" the insured property or a nearby property while the Policy was in effect. There is no dispute that the alleged loss occurred while the Policy was in effect. Thus, a showing of direct physical loss of or damage to the property or a nearby property is the fundamental predicate to Plaintiff's claims. However, Plaintiff's Complaint fails to meet this burden.

Although the Policy does not define "direct physical loss of or damage to", courts have. *See, e.g.*, *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) ("Florida's District Court of Appeals for the Third District has addressed the definition of 'direct physical loss[.]'" (citation omitted)). "A 'loss' is the diminution of value of something []." *Id.* (citation omitted). Moreover, "direct physical" modifies both "loss" and "damage." *See id.* Therefore, under

6

the Policy, any "interruption in business must be caused by some *physical problem* with the covered property . . . ." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-CIV-22615, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020) (citation omitted). That is, the damage or loss must be actual. *Mama Jo's Inc.*, 823 F. App'x at 879 (citation omitted).

On its face, Plaintiff's Complaint fails to properly allege that its claims are covered under the plain language of the Policy. Plaintiff alleges suspension of business operations, loss of access to the salon, loss of business income, and incurrence of extra expenses, as well as a diminution of value and intended use of the salon. However, Plaintiff fails to allege the Policy's threshold requirement for coverage: direct physical loss or damage to its property or any nearby property. Stated differently, Plaintiff's Complaint fails to clearly articulate the *actual* physical loss or damage to the salon. While Plaintiff argues that a loss of functionality of, access to, or intended use of the salon constitutes physical loss or damage, it is not supported by the plain language of the Policy or Florida law.

Plaintiff's allegations are strikingly similar to those in *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 20-CIV-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020). The district court there found that the plaintiff could not establish coverage under the plain language of the policy because the plaintiff failed to show that the COVID-19 pandemic and corresponding government response caused physical property loss and damage to the insured property. *Id.* at *9. Like the instant Complaint, the complaint there did not allege any actual or tangible physical harm to the covered property or another property in the immediate area. *Id.* at *8–9.

Plaintiff's allegations provide the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic. *See, e.g.*, *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL

6163142, at *7 (S.D. Ala. Oct. 21, 2020) (dismissing the plaintiff's complaint because "Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property – the [statewide] Order [postponing all medical procedures] did not immediately cause some sort of tangible alteration to Plaintiff's office" and therefore did not constitute direct physical loss); *Seifert v. IMT Ins. Co.*, No. CV 20-1102 (JRT/DTS), 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) (finding that the plaintiff's "claims fail to fall within the permissible realm of 'direct physical loss,' as he cannot allege facts showing his properties were actually contaminated or damaged by the coronavirus."); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020) (finding "no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage."); *Malaube, LLC*, 2020 WL 5051581, at *8 (granting the defendant's motion to dismiss because "Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining. . . . [T]his cannot state a claim because the loss must arise to actual damage. And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical."). The Court finds that Plaintiff's allegations, even if taken as true, do not plausibly show direct physical loss or damage to the insured property or any nearby property to trigger coverage under the Policy.[4] As Plaintiff may be able to cure this defect, the Complaint shall be dismissed without prejudice.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

---

[4] Having found no coverage under the Policy, it is not necessary for the Court to determine whether any exclusions under the Policy apply or whether the Plaintiff has otherwise sufficiently alleged a cause of action for breach of contract.

1. Defendants HDI Global Specialty SE, Axis Specialty Europe SE, Underwriters at Lloyd's London Subscribing to Policy Number RSK003959, and Underwriters at Lloyd's London Known as Syndicates AFB 2623, AFB 623, APL 1969, ARG 2121, BRT 2987, BRT 2988, HIS 33, KLN 510, MMX 2010, MSP 318, NVA 2007, TRV 5000, and XLC 2003's Motion to Dismiss the Complaint, [ECF No. 18], is **GRANTED**;

2. Plaintiff Atma Beauty, Inc.'s Complaint, [ECF No. 1], is **DISMISSED without prejudice**;

3. Plaintiff may request leave to file an amended complaint on or before **January 20, 2021**. Failure to do so will result in the Court dismissing this action *with prejudice*;

4. All other pending motions are **DENIED as moot**; and

5. This case is **CLOSED** for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of December, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE