**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:20-cv-21745-GAYLES**

**ATMA BEAUTY, INC.**,

    Plaintiff,

v.

**HDI GLOBAL SPECIALTY SE, AXIS
SPECIALTY EUROPE SE, UNDERWRITERS
AT LLOYD'S LONDON SUBSCRIBING TO
POLICY NUMBER RSK003959, and
UNDERWRITERS AT LLOYD'S LONDON
KNOWN AS SYNDICATES AFB 2623,
AFB 623, APL 1969, ARG 2121, BRT 2987,
BRT 2988, HIS 33, KLN 510, MMX 2010,
MSP 318, NVA 2007, TRV 5000, AND XLC 2003**,

    Defendants.

_____/

**ORDER**

    **THIS CAUSE** comes before the Court on Defendants', HDI Global Specialty SE, Axis Specialty Europe SE, Underwriters at Lloyd's London Subscribing to Policy Number RSK003959, and Underwriters at Lloyd's London Known as Syndicates AFB 2623, AFB 623, APL 1969, ARG 2121, BRT 2987, BRT 2988, HIS 33, KLN 510, MMX 2010, MSP 318, NVA 2007, TRV 5000, and XLC 2003 (collectively, "Defendants"), Motion to Dismiss the Amended Class Action Complaint (the "Motion") [ECF No. 50]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted.

# BACKGROUND[1]

Plaintiff Atma Beauty, Inc. owns and operates a full-service salon and medical spa in Miami Beach, Florida. On December 19, 2019, Defendants issued an all-risk insurance policy (the "Policy") that insured the physical premises of Plaintiff's salon and income generated from the salon. The Policy's coverage period was from December 19, 2019, to December 19, 2020. Plaintiff paid monthly premiums in exchange for Defendants covering certain losses and expenses, including loss of business income due to suspension of the salon's operations, expenses incurred during the salon's suspension, and loss resulting from actions of a civil authority that prohibited access to the salon.

## I.  The Policy

The general coverage provision of the Policy states that Defendants "will pay for *direct physical loss of or damage to* Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." [ECF No. 47-1 at 16] (emphasis added). A "Covered Cause of Loss" under the Policy means "Risks of Direct Physical Loss" unless the loss is excluded or limited. *Id.* at 45. The Policy includes a standard form titled "Business Income (and Extra Expense) Coverage Form" that outlines coverage for various losses and expenses. *Id.* at 32.

### A.  Business Income Coverage

The Policy provides coverage for loss of business income resulting from a Covered Cause of Loss and states in pertinent part that Defendants:

> [W]ill pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by *direct physical loss of or damage to* property at [covered] premises . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

---

[1] As the Court is proceeding on a motion to dismiss, it accepts Plaintiff's allegations in the Amended Class Action Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

*Id.* at 32 (emphasis added). The Policy defines "business income" as "[n]et income . . . that would have been earned or incurred; and . . . [c]ontinuing normal operating expenses incurred, including payroll." *Id.* Moreover, the Policy defines "suspension" as "[t]he slowdown or cessation of . . . business activities" or "a part or all of the [covered] premises [that] is rendered untenantable . . . ." *Id.* at 40.

### B. Extra Expense

The Policy provides payment for "necessary expenses [Plaintiff] incur[s] during the 'period of restoration'" that it "would not have incurred if there had been no *direct physical loss or damage to property* caused by or resulting from a Covered Cause of Loss."[2] *Id.* at 32 (emphasis added). This "Extra Expense" payment is designed to "[a]void or minimize the 'suspension' of business and to continue operations at the [covered] premises" or at an alternative location or to "[m]inimize the 'suspension' of business if [Plaintiff] cannot continue 'operations'." *Id.* at 32–33. The Policy will also provide payment under this provision "to repair or replace property, but only to the extent it reduces the amount of loss" during the period of restoration. *Id.* at 33.

### C. Civil Authority Coverage

The Policy provides coverage for loss of business income caused by the actions of a civil authority and states in pertinent part that:

> When a Covered Cause of Loss causes *damage to* property other than property at the [covered] premises, [Defendants] will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the [covered] premises, provided that both of the following apply:

---

[2] For Business Income Coverage, the "period of restoration" begins 72 hours after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss. [ECF No. 47-1 at 40]. For Extra Expense Coverage, the "period of restoration" begins immediately after the time of direct physical loss or damage by or resulting from a Covered Cause of Loss. *Id.* The period ends either on the date when the premise should be repaired, rebuilt, or replaced with reasonable speed and similar quality or the date when business resumes at a new permanent location, whichever is earlier. *Id.*

>   (1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the [covered] premises are within that area but are not more than one mile from the damaged property; and
>
>   (2)  The action of civil authority is taken in response to *dangerous physical conditions* resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* (emphasis added).

## II.   Factual Background

In response to the SARS CoV-2 virus ("COVID-19") pandemic, businesses across the United States were forced to close, severely limit and/or change their operations, and reconfigure their premises to mitigate, prevent, and contain the spread of COVID-19 on their properties. On March 12, 2020, the City of Miami Beach declared a State of Emergency in response to the COVID-19 pandemic and, on April 23, 2020, extended the State of Emergency through April 30, 2020. The State of Emergency required the closure of all non-essential retail and commercial establishments in Miami Beach—including Plaintiff's salon. On March 19, 2020, Miami-Dade County issued Emergency Order 07-20, which also required that all non-essential businesses close. On March 30, 2020, the Governor of Florida signed Executive Order 20-89, which ordered counties in Florida—including Miami-Dade County—to restrict public access to non-essential businesses.

Plaintiff states that the presence of COVID-19 caused direct physical loss of and/or damage to the salon in two ways. First, it physically contaminated the air and surfaces of Plaintiff's property, which eliminated, impaired, or limited the use of the property. Plaintiff made efforts to mitigate, prevent, contain, and reduce the contamination but could not do so permanently or reliably. Second, Plaintiff had to physically alter its property, including: (1) installing physical

barriers throughout its property; (2) using harsh cleaning agents that cause surfaces to deteriorate faster; (3) significantly reducing the occupancy of its property; and (4) reducing the number of stations at which beauty services are provided. Plaintiff also states that the presence of COVID-19 caused all or part of the property to be uninhabitable by customers and caused the property's physical function to be nearly eliminated, destroyed, and/or severely limited.

Although Plaintiff implemented decontamination protocols, it could not eliminate the presence of COVID-19 or fully mitigate its losses. First, the cleaning protocols could not eliminate COVID-19 contamination because of the possibility of recurring contamination. Second, the physical alterations Plaintiff made to its property caused a loss of business income. Third, Plaintiff's cleaning protocols caused loss and damage to the property because the use of harsh cleaning agents deteriorated surfaces more rapidly.

Additionally, the actions of civil authorities prohibiting public access to the salon and surrounding areas in response to the COVID-19 pandemic caused Plaintiff's business operations to suspend. In response, Plaintiff provided notice to Defendants of Plaintiff's losses and expenses, as required by the Policy. However, Defendants refused to provide coverage under the Policy.

### III. Procedural History

On April 27, 2020, Plaintiff filed this action against Defendants for declaratory relief and monetary damages pursuant to the Policy. [ECF No. 1]. On July 14, 2020, Defendants moved to dismiss Plaintiff's Complaint, [ECF No. 18], which the Court granted on December 30, 2020, [ECF No. 44]. On January 25, 2021, Plaintiff filed its Amended Class Action Complaint (the "Amended Complaint") which brings claims for: (1) declaratory judgment as to the Business Income, Extra Expense, and Civil Authority Coverage provisions (Counts I, III, and V); and (2) breach of contract of the Business Income, Extra Expense, and Civil Authority Coverage

provisions (Counts II, IV, and VI). [ECF No. 47]. On February 16, 2021, Defendants filed the instant Motion seeking dismissal of the Amended Complaint with prejudice. [ECF No. 50].

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## DISCUSSION

In their Motion, Defendants seek to dismiss Plaintiff's Amended Complaint with prejudice. Defendants argue that Plaintiff fails to establish that the presence of COVID-19 caused a "direct physical loss of or damage to" the insured property to trigger the Business Income Coverage provision of the Policy. Additionally, Defendants argue that Plaintiff fails to properly establish a claim under the Civil Authority Coverage provision of the Policy. In the alternative, Defendants

argue that the microorganism and pollution exclusions bar coverage of Plaintiff's claims. The Court finds that Plaintiff fails to establish that its claims are covered under the Policy.

"In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its 'full meaning and operative effect.'" *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). "[I]nsurance contracts are construed according to their plain meaning," *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (citation omitted); that is, courts begin their analysis by looking at the "plain language of the policy, as bargained for by the parties," *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002) (citation omitted). Where coverage is in dispute, "an insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect." *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018) (quoting *Mejia v. Citizens Prop. Ins. Corp.*, 161 So. 3d 576, 578 (Fla. 2d DCA 2014)). If the insured satisfies its burden, "[t]he burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." *Id.* (citations and internal quotation marks omitted).

To trigger coverage under the Business Income Coverage and Civil Authority Coverage provisions of the Policy, Plaintiff must prove that there was "direct physical loss of or damage to" the insured property or a nearby property while the Policy was in effect. *See* [ECF No. 47-1 at 16]. The term "direct physical loss of or damage to" is not explicitly defined in the Policy. Plaintiff argues that the term must be given its plain and ordinary meaning, and the term must be given the meaning most favorable to coverage if it is susceptible to more than one reasonable interpretation. *See* [ECF No. 51 at 5]. Where a term in a policy is not defined, courts use the plain meaning of the word. *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, No. 20-CIV-23245, 2021 WL 1540907, at *5 (S.D. Fla. Apr. 16, 2021). "A 'loss' is the diminution of value of something []." *Mama Jo's Inc.*

7

*v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (alteration in original) (citation omitted). Moreover, "direct physical" modifies both "loss" and "damage." Therefore, under the Policy, "any interruption in business must be caused by some *physical problem* with the covered property . . . ." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-CIV-22615, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020) (citations and internal quotation marks omitted). Thus, "[a] direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CIV-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (citations and internal quotation marks omitted), *aff'd*, 823 F. App'x 868 (11th Cir. 2020).

Here, Plaintiff argues that the presence of COVID-19 on its property "physically changed the condition of Plaintiff's property from usable and inhabitable to unusable, uninhabitable, [and] unfit for its intended purpose of beauty services, and dangerous and unsafe for human occupation . . . ." [ECF No. 47 at 15–16 ¶ 62]. Plaintiff also details the physical alterations it made to its property in response to COVID-19, which include: (1) reconfiguration of seating; (2) installation of plexiglass shields and additional sanitizer dispensers; (3) enhancement of air filtration systems; and (4) more frequent replacement of equipment due to deterioration from increased cleaning. *Id.* at 16 ¶ 63. However, courts in this Circuit have almost uniformly dismissed these types of allegations as insufficient to establish coverage.

First, "the mere presence of the virus on the physical structure of the premises" does not amount to "direct physical loss." *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1318 (S.D. Fla. 2021). The Eleventh Circuit recently affirmed this finding, noting that it could "not see how the presence of . . . [COVID-19] particles would cause physical damage or loss to the

[insured] property." *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, --- F. App'x ---, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021). Like Plaintiff, *see* [ECF No. 47 at 14 ¶ 58], the plaintiff in *Gilreath* argued that it was "problematic that its office is an enclosed space where viral particles tend to linger, and where patients and staff must interact with each other in close quarters," *id.* Unpersuaded, the Eleventh Circuit affirmed the district court's finding that the plaintiff there failed to show that the insurance provider "breached the policy's 'Business Income' and 'Extra Expense' provisions." *Id. See also Carrot Love, LLC v. Aspen Specialty Ins. Co.*, 513 F. Supp. 3d 1364, 1367 (S.D. Fla. 2021) (dismissing the plaintiff's claims where the plaintiff alleged that the "presence of any COVID-19 particles on physical property such as countertops, tables and chairs, impair[ed their] value, usefulness, and/or normal function causing the Plaintiff to suffer a direct[] physical loss or damage that is covered under its policy with the Defendant" (alterations in original) (citation and internal quotation marks omitted)); *Runway 84, Inc. v. Certain Underwriters at Lloyd's, London*, --- F. Supp. 3d ---, No. 20-CIV-62257, 2021 WL 2767079, at *5 (S.D. Fla. Mar. 31, 2021) ("Plaintiffs' argument that the presence of COVID-19 made the property unsuitable for its intended purposes because it closed for business due to the pandemic does not establish the physical loss or damage required by the Policy.").

Second, the physical alterations Plaintiff made in order to avoid contamination of COVID-19 on its property do not qualify as physical loss or damage to the property. *See, e.g., Bourgier v. Hartford Cas. Ins. Co.*, No. 21-CIV-21053, 2021 WL 3603601, at *4 (S.D. Fla. Aug. 12, 2021) ("[E]ven if [the plaintiff's] salon physically changed, that is, [the plaintiff] moved the salon's furniture around, added hand sanitizer stations and plexiglass, or enhanced the air filtration system, it still cannot be said that there was actual damage to the property."); *Café La Trova LLC v. Aspen Specialty Ins. Co.*, --- F. Supp. 3d ---, No. 20-CIV-22055, 2021 WL 602585, at *9 (S.D. Fla. Feb.

16, 2021) ("[T]he Court is unpersuaded by Plaintiff's argument that damage caused by moving furniture and installing partitions is sufficient to trigger coverage for its business income losses."). The Court is cognizant of the effects of the COVID-19 pandemic on Plaintiff's business; however, the Court declines to depart from the prevailing consensus in this Circuit.

Plaintiff also argues that it qualifies for coverage under the Civil Authority Coverage provision of the Policy as a result of the City of Miami Beach, Miami-Dade County, and the State of Florida's emergency orders in response to the COVID-19 pandemic. Triggering the Civil Authority Coverage provision of the Policy first requires a showing of "*damage to* property other than property at the [covered] premises . . . ." [ECF No. 47-1 at 32] (emphasis added). Plaintiff argues that the emergency orders "prohibit[ed] public access to the covered premises and the surrounding area . . . in response to dangerous physical conditions in the vicinity of [Plaintiff's] salon and caused a suspension of business operations on the covered premises." [ECF No. 47 at 21 ¶ 78]. However, this is insufficient to establish coverage under the Policy. First, the emergency orders were issued in response to the *presence* of COVID-19, not in response to *damage* to nearby property that limited access to Plaintiff's property. Second, as previously stated, the possible presence of COVID-19 at nearby properties would similarly not qualify as physical loss or damage to those properties such that the Civil Authority Coverage provision would be triggered. Thus, the Court finds that Plaintiff's allegations, even if taken as true, do not plausibly show direct physical loss or damage to the insured property or nearby property to trigger coverage under the Civil Authority Coverage provision of the Policy.[3]

---

[3] Having found that there is no coverage under the Policy, it is not necessary for the Court to determine whether any exclusions under the Policy apply or whether Plaintiff has otherwise sufficiently alleged a cause of action for breach of contract.

Because Plaintiff fails to establish coverage under either the Business Income Coverage or Civil Authority Coverage provisions of the Policy, Defendants' Motion is granted and Plaintiff's Amended Complaint shall be dismissed with prejudice.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants HDI Global Specialty SE, Axis Specialty Europe SE, Underwriters at Lloyd's London Subscribing to Policy Number RSK003959, and Underwriters at Lloyd's London Known as Syndicates AFB 2623, AFB 623, APL 1969, ARG 2121, BRT 2987, BRT 2988, HIS 33, KLN 510, MMX 2010, MSP 318, NVA 2007, TRV 5000, and XLC 2003's Motion to Dismiss the Amended Class Action Complaint, [ECF No. 50], is **GRANTED**.

2. Plaintiff Atma Beauty, Inc.'s Amended Class Action Complaint, [ECF No. 47], is **DISMISSED with prejudice**.

3. Any pending motions are **DENIED as moot**.

4. This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 13th day of September, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE